

See, also, 46 F.Supp. 669.

Morris Wolf, of Philadelphia, Pa., for trustee.

Robert Dechert, of Philadelphia, Pa., for Second Mortgage Bondholders (and certain First Mortgage Bondholders).

KIRKPATRICK, District Judge.

The trustee's services in this proceeding have covered a period of just about four years. There is not the slightest question as to his competency and special qualifications. During the first year he was what his counsel describes as "a typical trustee, supervising the debtor companies and aiding * * * in working out a Plan of Reorganization." At the end of that period he took over actual operation and for the last three years has been the sole executive officer of the company. During the entire period, he also held a salaried position with other non-competing coal interests, and his estimate is that he devoted half his working time (which he placed at 10 to 12 hours per day, 6 days a week) to the duties of this trusteeship.

Speaking in a very general way, this reorganization proceeded through three phases: (1) Promotion of a plan (partially worked out before the petition was filed) which broke down by reason of inability to come to an agreement with the owners of the fee. (2) Formulation and submission of a second plan which failed because of the opposition of the largest creditor group. (3) The consummation of the final plan, the principal feature of which was the sale of all the assets to a competing company and which was much like liquidation. In connection with all these plans the trustee was an active and positive factor. In fact one argument advanced against his

request for allowances is based upon the asserted fact that in attempting to secure the adoption of the second plan he proceeded in disregard of the known and consistent opposition of the largest creditor group —a situation which, it is contended, should have apprised him that he was merely wasting time.

The properties of the debtor were appraised, as a going concern, at about a million dollars, which may be taken as about the value of the enterprise at that time. It was, of course, hopelessly insolvent, having nearly four million dollars of bonds and interest outstanding. Its free assets at the time the petition was filed are estimated by the trustee at $54,000 and by the objectors at $140,000. The amount to be distributed after sale is approximately $438,000, less expenses and allowances already made.

In taking over the active management of the company the trustee terminated a management and sales contract which had been in operation during his first year and thereby reduced management charges by about $15,000 per year. This represented the elimination of salaries of employees whose duties he assumed.

I think that a total compensation of $46,000 is proper, from which must be deducted the amount already paid him.

### Counsel for Trustee

Counsel for the trustee states in his petition for allowances that approximately 2,100 hours of the working time of his firm have been occupied in work for the trustee. This includes time of the senior partner and a junior partner and of an associate, in just what proportions does not appear. The court is familiar with the high degree of ability which the firm brought to this reorganization and the conscientious thoroughness of the legal work which it did. It is true that there were no big lawsuits involved, but much potential litigation was avoided by the working out of satisfactory settlements. The work cannot be described as routine but it was, in general, of the kind normally to be expected in a reorganization in which the parties in interest are hopelessly at odds on the general scheme to be adopted.

Special features which may be mentioned were a complicated and difficult labor situation and the fact that, by reason of the location and physical characteristics of its mine, the value of the debtor's property, either in reorganization or liquidation, depended upon what kind of deal could be made with an adjoining and competing coal company. The extent of counsel's services and the amount of time spent, as stated in his petition, have not been disputed by any one. The only question is as to the proper value to place upon them in the framework of this particular proceeding. Taking into consideration, among other things, the size of the enterprise, the general results obtained for creditors and the amount on hand for distribution from which allowances must come, I fix the counsel fee at $33,000. This, it may be noted, will amount to a little over $8,000 a year, or a little over $15 per hour.

### General Considerations

It will be noted that the expenses allowed amount to about eight percent of the original appraised value of the business and about 18 percent of the amount on hand for distribution. The latter ratio is, of course, comparatively unimportant. As has been pointed out more than once, cases have occurred in which even wholly inadequate allowances have eaten up the entire fund available for creditors. Eight percent of the value of the estate is not particularly economical administration, but in making these allowances I have taken into consideration the fact that there are no other counsel fees, committee fees or any of the usual requests for allowances by various participating parties. I have also considered the fact that a very substantial reduction in the operating expenses of the business was made by the trustee when he took over its active management. The reorganization cannot be called an outstanding success but the obstacles in the way of reorganizing the company as an independent going concern were really insuperable and, on the final winding up of the company, the amount realized was considerably larger than had appeared possible.

An order in accordance with the foregoing may be submitted.